96   337
98   390
98   724
98   725

## Staunton.

### THE LYNCHBURG PERPETUAL BUILDING AND LOAN CO. v. FELLERS AND OTHERS.

#### SEPTEMBER 15, 1898.

Absent, Cardwell, J.

1. TRUST DEED ON LAND—*Purchaser of Part—Burden of Proving Payment or Release.*—The purchaser of a part of a tract of land, who has full notice or knowledge of a deed of trust on the whole, must assume the burden of proving, if he asserts it, that the trust debt has been paid or released in whole or in part. The burden is on him to show that the trust creditor, with notice of his equities, has done some act to his prejudice.

2. RELEASE OF PRIMARY SECURITY—*Effect on Secondary Security.*—If property primarily liable for the payment of a lien be released by the creditor, the value thereof must be credited on the debt as against the owner of property secondarily liable therefor. But if the purchaser of the property primarily liable assumes the payment of the whole of the lien, and he be thereafter released by the creditor, or with his consent, the property secondarily liable is thereby released altogether.

3. LANDS SUCCESSIVELY LIABLE TO LIEN—*Release of Primary Security—Effect on Secondary—General Rule—Exceptions—Case in Judgment.*—Ordinarily, when parcels of land are liable to be subjected in the inverse order of alienation to the payment of a debt secured by a prior deed of trust on the whole, if the trust creditor, with notice of the situation, releases a part of the land primarily liable, the value of the land so released will be credited on his debt as against all of the parcels subsequently liable. But this effect of the release may be obviated by the conduct of the parties to be affected, and, in the case in judgment was so obviated as to one of the appellees, who had notice of all the facts constituting the alleged release, and of whose rights and interests it does not appear that the appellant had notice.

4. REGISTRY ACTS—*Notice—Effect on Prior Grantee of the Registry of a Subsequent Deed.*—The registry of a subsequent deed of conveyance of

land is no notice to parties who have acquired their rights before the time when the deed was registered. The registry acts are not intended to affect antecedent rights, but only such persons as are compelled to search the records for the protection of their interests.

Appeal from a decree of the Circuit Court of the City of Roanoke pronounced January 22, 1896, in a suit in chancery wherein the appellee, M. L. Fellers, was the complainant, and the appellant and others were the defendants.

*Reversed in part.*

W. P. Huff was the owner of a lot of land in the city of Roanoke, on which there were three houses. A part of the lot was vacant. He executed a deed of trust on the entire lot to secure to the appellant a debt of $2,000. Subsequently, in July, 1891, he sold the vacant lot to the trustees of the United Brethren Church for the sum of $2,600, of which they paid $600 cash, and the trustees of the church assumed to pay the debt due the appellant. Huff executed and delivered to the trustees of the church a deed conveying this property to them. This deed was not put to record. At or about the same time Huff sold and conveyed to W. H. Strickler, one of the trustees of the church, another portion of the original lot, with a house on it. This deed was not put to record till September 8, 1891.

On November 21, 1891, Huff sold and conveyed to M. L. Fellers another portion of the lot on which there were two houses. This deed was put to record June 4, 1892. Strickler and Fellers each paid in full the prices agreed to be paid by them respectively for the lots severally purchased by them.

The trustees of the church, after making three monthly payments on appellant's debt, notified Huff that they could not and would not proceed further with their purchase, and between that time and November, 1892, Huff and the trustees of the church agreed to rescind their contract of sale. No reconveyance of the property was made to Huff by the trustees, but

the unrecorded deed to them from Huff was destroyed. The trustees of the church then agreed to purchase of Huff a portion of the lot embraced in their first contract, provided the lot was released from the lien of appellant. This lien was released as to this portion of the lot by deed from appellant dated November 12, 1892, and the lot conveyed to the trustees by Huff by deed dated November 26, 1892. The consideration stated in this deed was $1,400, of which $728.82 paid by the trustees on the original purchase was treated as a cash payment, and the further sum of $200 was paid cash, and credits allowed for the balance, which was subsequently paid. The $200 cash received of the trustees was paid over by Huff to the appellant. Strickler was one of the trustees of the church, and had full knowledge of and participated in the negotiations for the release of the trustees from their original contract. The deed to him recited the original sale to the trustees, and their agreement to assume the payment of the debt due to the appellant, but the appellant had no actual notice of the conveyance to him. There was no direct proof that appellant had any knowledge of the rescission of the original contract between Huff and the trustees of the church, but it was sought to charge the appellant with such knowledge by reason of the knowledge of John W. Woods, its counsel in Roanoke. It sufficiently appears, however, that whatever knowledge he had was acquired after the termination of his duties in respect to that transaction, and in reference to a matter in which he was not the agent of the appellant.

*Moomaw & Woods*, for the appellant.

*Scott & Staples, Hansbrough & Hall, Josiah Friend* and *S. Hamilton Graves,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

In February, 1891, W. P. Huff, who was the owner of a lot

of land in the city of Roanoke, on which there were three houses, executed a deed of trust to secure the payment of the sum of $2,000, which he had borrowed from the appellant. In July following, Huff sold and conveyed a part of the lot to the trustees of the United Brethren Church for $2,600. They paid $600 in cash, and assumed, it is alleged, payment of the debt due the appellant. At or about the same time Huff sold and conveyed another portion of the lot, with a house on it, to W. H. Strickler, one of the trustees of the church.

In November of the same year M. L. Fellers purchased from Huff another portion of the lot, upon which the other two houses were located, and received a conveyance therefor. The trustees of the church, after paying three monthly instalments (July, August, and September,) of $42.94 each, upon the debt secured by the deed of trust, notified Huff that they could not, and would not, proceed further with their purchase. Between that time and November, 1892 (precisely when does not clearly appear), Huff and the church trustees agreed to rescind the contract between them for the sale and purchase of the lot. No reconveyance was made, but the deed from Huff to them, which had never been recorded, was destroyed. Prior to the 26th day of November, 1892, Huff agreed to sell to the trustees of the church a portion of the lot embraced in their first contract, which had been rescinded. The trustees of the church required as a condition precedent to their purchase, that Huff should have that portion of the lot released from the lien of the deed of trust. The lien was released by the appellant by deed dated November 12, 1892, as to that portion of the lot, and on the 26th of the month Huff conveyed it to the trustees of the church.

A large part of the appellant's debt remains unpaid, and the questions presented by this record are, what property is liable for its payment, and the order in which the property liable should be subjected.

The second, third, fourth, fifth, and sixth assignments of

error raise substantially the same question, viz., to what extent, if at all, had the land purchased by Fellers been released from the lien of the deed of trust by reason of the conduct of the appellant.

The conduct relied on to show that it had been absolutely released was that Huff and the trustees of the church had rescinded the contract between them of July, 1891, by which the latter had assumed the payment of the debt secured by the deed of trust, and that this rescission was with the assent of the appellant.

, The burden of proving that the appellant had assented to the rescission of the contract was upon Fellers. He had purchased with full knowledge of the appellant's lien, and, in order to prevent the land so purchased from being subjected to its payment, it was necessary for him to show that the appellant, with notice of his equities, had done some act to his prejudice. The evidence does show, we think, that the appellant had notice of Fellers' purchase, or that he had an interest in the land when the appellant executed the release of November 12, 1892. After his purchase was made and the policy of insurance had expired, which had theretofore been taken out by Huff on the property for the benefit of appellant, and as a further protection to the debt secured by the deed of trust, Fellers obtained a new policy in his own name on the house on that portion of the property purchased by him. That policy was sent to the appellant by the secretary of the insurance company, accompanied by a letter dated July 7, 1892, in these words: " Please find enclosed fire insurance policy, $1,200, in renewal of policy of W. P. Huff, expired on the 9th, on property on which you have a lien. It was the opinion of Mr. Fellers that the houses insured would not stand more insurance than $600 each, and for that reason the amount was reduced." It is proved that it appeared from Fellers' policy of insurance that the title was in him, and that the appellant had a deed of trust upon the property. It further appears

that, in December, 1893, after the property had been adver-
tised for sale under the deed of trust, Fellers went to the office
of appellant to see the secretary in order to get an extension
of time, and whilst there he inquired if the policies of in-
surance had not expired, thinking that he had only taken
them out for twelve months, when the secretary replied that
they had not; that they were three-year policies; went to his
safe and took them out, and said, "Here are the policies and
deed of trust." When asked if the appellant knew before that
time that he was a purchaser of the property, he replied that
he could not say that it did, as there had never been any cor-
respondence between them, but that the facts seemed to be
familiar to the secretary when he (Fellers) told him who he
was.

Unexplained, and the appellant made no effort to explain
them, these facts show that the company must have known,
when it released the church lot from the lien of the deed of
trust, that Fellers had acquired an interest in the property
embraced in the deed of trust. Upon no other reasonable
theory can its acceptance and retention of Fellers' policy of
insurance be explained or justified. The evidence, however,
does not show, in our opinion, that the appellant was a party
to or knew of the rescission of the contract of July, 1891,
by which the trustees of the church assumed to pay the debt
secured by the deed of trust. The Circuit Court erred, there-
fore, in holding that the Fellers property was absolutely
released from the lien of the deed of trust. It was only dis-
charged from an amount of the deed of trust debt equal to the
value of the parcel released so far as the proceeds of that parcel
had not been applied to the payment of the lien. The injury
done to Fellers by the release was the difference between the
value of the property released and what was actually paid out
of its proceeds, or on account of it, upon the lien.

In the event the proceeds of the Fellers lot is not sufficient
to satisfy that portion of the appellant's debts chargeable upon

it, as hereinbefore shown, the Strickler lot will be liable, being next in order of alienation by Huff. It will also be chargeable with that portion of the debt of appellant from which the Fellers lot was discharged by the release of the church lot from the lien of the deed of trust. Ordinarily, when the equities of the various owners of lands subject to a deed of trust are unequal, so that their respective parcels are liable, in the inverse order of their alienation, if the deed of trust creditor, having notice of this situation, releases a parcel which is primarily liable, he thereby discharges or releases those parcels which are subsequently liable in the order of their several liabilities from an amount of the deed of trust debt equal to the value of the parcel released. But this effect of the release may be obviated by the conduct of the parties to be affected. 3 Pom. Eq. Jur., sec. 1226.

In this case Strickler's conduct has been such that he cannot claim the benefit of the general rule. He was one of the trustees of the church when their first purchase was made; when that contract was rescinded; when they made their second purchase upon the condition that the lien of the deed of trust upon it should be released, and when that release was made. He was an active participant in all these various transactions between Huff and the trustees of the church, and had full knowledge of all the facts. The evidence does not show that the appellant had notice of his rights or interest in the property when it released its lien, even if notice under the facts of the case could affect the question. There is no pretense that Strickler informed the appellant of his purchase.

The registry of his deed was not notice to the appellant. It is true, we think, as stated by counsel, that this court has never passed upon that question, but it is well settled, both upon principle and authority, that the registry of a deed by a subsequent purchaser is no notice to parties who have acquired their rights before the time when the deed is registered. Neither the language nor the policy of the registry acts was

intended to affect the holders of antecedent rights, but only such persons as are compelled to search the records in order to protect their own interests. *Cheeseborough* v. *Millard*, 1 Johns. Chy. 409, 414; *George* v. *Wood*, 9 Allen, 80; notes to *Aldrich* v. *Cooper*, 1 White & Tudor's Lead. Cas. in Eq. (4th Am. from 4th London Ed.), pp. 307 to 312; 1 Jones on Mortgages, secs. 562, 372; 2 Pom. Eq. Jur., secs. 656, 657, and 1226.

Neither is it satisfactorily shown that Judge Woods was such an agent of the appellant and acquired his knowledge of Strickler's purchase under such circumstances as that his knowledge would be notice to it.

Whether the trustees of the church, who, it is alleged, assumed payment of the appellant's debt, are personally liable for it, and, if so, whether Fellers is substituted to the appellant's rights against them or to their rights, if any, against the church property, are questions which cannot be passed upon at this time. Only two of the five or more trustees of the church who are charged with having assumed the payment of the appellant's debt are parties to this suit. They are necessary parties, and before any decree is made affecting their rights, they should be made parties to this suit.

We are of opinion, therefore, that the decree complained of must be affirmed in so far as it fixes the amount due appellant on its debt, and directs the vacant lot situated on the southeast corner of Franklin road and Day avenue, still owned by Huff, to be first subjected to its payment, and that in all other respects the decree must be reversed, and the cause remanded to the Circuit Court to be proceeded with in accordance with the views expressed in this opinion.

*Reversed in part.*