# Wytheville.

## KELLY AND OTHERS V. HAMBLEN AND OTHERS.

### JUNE 28, 1900.

### Absent, Riely, J.*

1. RES JUDICATA—*Case in Judgment—Demurrer to Plea or Answer.*—A decree or judgment concludes not only what is in fact adjudicated, but all questions in issue, whether formally litigated or not. Every point decided, and, by necessary implication, every issue which must have been decided in order to support the judgment or decree is concluded. In the case in judgment, the parties were not the same as in the former suit, the land sought to be subjected was not the same, and the relief sought in this suit could not have been granted in the former suit, in the condition in which it was when the decree sought to be set up as a bar was pronounced.

   *Quære:* Does a demurrer lie to a plea or answer in chancery?

2. CHANCERY PLEADING AND PRACTICE—*Suit to Enforce Judgment—Second Suit for Same Purpose.*—While a judgment may not be divided into different causes of action, yet a suit brought to enforce the lien thereof, prosecuted in good faith, though ineffectually, is not a bar to a subsequent suit by the same complainant against the same defendant to enforce satisfaction of the same judgment. Courts of equity, however, by their decrees for costs, will prevent the capricious or oppressive exercise of the right, and protect litigants against unnecessary and vexatious litigation.

3. CHANCERY PLEADING AND PRACTICE—*Exception to Answer—Effect.*—An exception to the sufficiency of an answer is tantamount to an averment that the answer, if true, constitutes no defense to the complainant's demand.

4. CHANCERY PLEADING AND PRACTICE—*Suit to Enforce Judgment—Answer Showing Subsequent Alienations—Sufficiency of Answer.*—If a defendant in chancery, whose land is sought to be subjected to the

---

*Judge Riely was prevented by sickness from attending this term.

lien of a judgment against his vendor, answers that other lands of his vendor, or lands of a subsequent alienee of his vendor, are liable to the complainant's demand, the answer is not liable to exception for insufficiency, and the defendant should be allowed to show those facts.

Appeal from a decree of the Circuit Court of Wise county, pronounced April 8, 1899, in a suit in chancery, wherein the appellee, C. L. Hamblen, was the complainant, and the appellants and others were the defendants.

*Reversed.*

The opinion states the case.

*Bullitt & Kelly*, for the appellants.

*R. T. Irvine*, for the appellees.

KEITH, P., delivered the opinion of the court.

In the year 1893, Logan & Brewer recovered a judgment in Lee county against J. J. Kelly, Sr., for the sum of $5,000, with interest from January 1, 1891. At the same time, Kirkpatrick recovered a judgment against the same defendants for $5,000, with interest from the same date. About the same time the Asheville Shoe Company, a judgment creditor, brought suit in the Circuit Court of Lee county against Kelly & Coldiron and others, alienees of Kelly, for the purpose of subjecting certain lands in Lee county, which were then in possession of said alienees, claiming that the lands really belonged to Kelly, and that he had conveyed them to his co-defendants with the intent to defraud, hinder and delay his creditors. Plaintiff sought also to subject any other land owned by Kelly to the satisfaction of its judgment. The cause was referred to a commissioner with direction to ascertain and report the liens against Kelly and their priorities, and what lands, if any, were subject thereto. The judgment creditors were made parties, and their several judgments were duly reported by the commissioner, who

also reported that the lands claimed by Coldiron and others were subject to liens of the said judgments, and a decree was entered holding the lands in Lee county liable, and directing that they should be sold. Coldiron and others appealed from this decree, and it was reversed and the bill dismissed. Thereafter, in 1898, Logan & Brewer and Kirkpatrick instituted a chancery suit in the Circuit Court of Wise county against J. J. Kelly, Sr., and J. J. Kelly, Jr., the object of which was to enforce the judgment obtained by them against two tracts of land lying in Wise county, claimed by J. J. Kelly, Jr. One of these tracts contained 535 acres, worth about $20,000, and the other about 800 acres, worth about $16,000. J. J. Kelly, Jr., and J. J. Kelly, Sr., answered, stating that these several tracts belonged to J. J. Kelly, Jr., and were not liable to the judgments of the plaintiffs. Proofs were taken, but before a final hearing, a compromise between the parties was made, by which J. J. Kelly, Jr., agreed to pay 33⅓ *per cent.* of the judgments of Logan & Brewer and Kirkpatrick; and thereupon, at the next term of the Circuit Court this suit was, in pursuance of this compromise, dismissed.

At August rules, 1898, C. S. Hamblen, who in the mean time had become an assignee of the Logan and Brewer judgment, brought suit in Lee county against William J. Kelly and J. J. Kelly, Sr., making all other judgment creditors of J. J. Kelly, Sr., parties. The object of the suit was to enforce the lien of the judgments against a certain tract of land containing 700 acres, more or less, the surface of and timber on which were owned and claimed by William J. Kelly; complainants in the bill averring that J. J. Kelly, Sr., had parted with the title to the said land to William J. Kelly after the liens of the judgments had attached thereto. To this bill J. J. Kelly filed a plea, in which he sets forth the proceedings in the case of Asheville Shoe Company against himself and others, and relies thereon as *res judicata.*

William J. Kelly filed an answer, in which he likewise relies upon said proceedings, and also upon the suit of Logan, Brewer and others against J. J. Kelly, Jr., and J. J. Kelly, Sr., as *res judicata,* and also as a bar to any further proceedings against his lands, because, as he alleges, the lands of J. J. Kelly, Jr., were liable to the said judgments, and were worth a great deal more than the total amount thereof, to wit, at least $36,000, and that, notwithstanding this fact, the parties had compromised and dismissed the proceedings against those lands.

Plaintiffs demurred to the plea of *res judicata* filed by J. J. Kelly, Sr., and filed exceptions to the answer of William J. Kelly on the ground that the same did not constitute any defence. At the April term, 1899, the Circuit Court of Wise county entered a decree sustaining the demurrers to the plea, and the exceptions to the answer; and thereupon J. J. Kelly declined to further plead or answer, and William J. Kelly declined to amend his answer, and the court entered a decree holding that none of the judgments against J. J. Kelly, Sr., constituted liens upon the 700-acre tract, except the judgments of Logan & Brewer and Kirkpatrick, but maintained the liens of those judgments, and directed that unless they should be paid within a certain time, the surface of the 700-acre tract and the timber thereof should be sold.

The facts with respect to the 700-acre tract appear to be as follows: In 1882 it belonged to J. J. Kelly, Sr., who in that year sold and conveyed to one Kemmerer the coal and minerals in it. In the year 1884 J. J. Kelly conveyed the surface and timber upon this tract to his son David Kelly, but this deed was never put to record. Subsequently, by an arrangement among the parties, David Kelly was given an interest in certain lands in Lee county, and in consideration thereof, he assigned and conveyed to William J. Kelly all his right, title, and interest in the 700-acre tract, who, finding that there was no deed on the record from J. J. Kelly, Sr., to David Kelly, procured from J. J. Kelly,

Sr., a deed direct to himself, dated October 5, 1890, which was not recorded in Wise county until March 13, 1894, after the judgments of Logan & Brewer and Kirkpatrick had been docketed in that county, but before the judgments of any of the other creditors had been so docketed.

From the decree of the April term, 1899, the appeal now before us was taken, and the petitioners, J. J. Kelly, Sr., and William J. Kelly, admit that the judgments of Logan & Brewer, assigned to Hamblen as aforesaid, and the judgment of Kirkpatrick, constitute liens on the surface and timber of the 700-acre tract, unless the rights of Hamblen and Kirkpatrick have been lost by reason of the proceedings in Lee county in the suits brought by the Asheville Company, or by reason of the proceedings in Wise county in the suit of Logan & Brewer against J. J. Kelly, Jr., and others; but the petitioners insist that the proceedings in each of those causes do constitute bars to the right of recovery in this suit.

They assign as error in the decree complained of, first, that the court erred in sustaining the demurrer to the plea of *res judicata* filed by J. J. Kelly, Sr.

We shall not inquire nor decide whether a demurrer applies to an answer or plea in a chancery case. It would seem that it can only be interposed to a bill. However this may be, the appellant made no objection to it in the Circuit Court, has not assigned it as error in this court, and we, therefore, neither approve nor condemn the practice, but reserve it for future consideration.

From an inspection of the record of the *Asheville Shoe Co.* v. *Coldiron and Others*, which, as we have seen, resulted in a reversal of the decree of the Circuit Court of Lee county, and a dismissal of the bill filed by the judgment creditors of J. J. Kelly, Sr., it appears, first, that William J. Kelly, one of the petitioners in the case before us, was not a party to that proceedings. It further appears from the opinion of the court

(see *Coldiron* v. *Asheville Shoe Co.*, 93 Va. 364) that the lia-
bility of the 700-acre tract in Wise county to the lien of the
judgments against J. J. Kelly, Sr., was never considered by the
court. Creditors appear to have made strenuous efforts to dis-
cover land out of which their judgments might be satisfied.
The records were examined, interrogatories were filed, and no
effort seems to have been spared to accomplish that result, and,
after a careful investigation of the record, we cannot discover
that the liability of the 700-acre tract to the lien now asserted
against it was in that case heard and determined; nor do we
think that the principle invoked by counsel for petitioners
applies to a case such as this. It is true, as he contends, that
the doctrine of *res judicata* embraces not only what was in point
of fact adjudicated, but the judgment or decree is conclusive
as to all questions in issue, whether formally litigated or not.
" It is not necessary to the conclusiveness of the former judg-
ment or decree that the issue should have been taken upon the
precise point which it is proposed to controvert in the collateral
action. It is sufficient if that point was essential to the former
judgment. Every point which has been specifically decided,
and, by necessary implication, every issue which must have been
decided, in order to support the judgment or decree, is con-
cluded." *Diehl* v. *Marchant*, 87 Va. 447; Wells on *Res Judi-
cata*, p. 187; *Diamond State Iron Co.* v. *Rarig*, 93 Va. 595.

It is not necessary, however, to enlarge upon the familiar
doctrine of *res judicata*, or to multiply authorities upon the
subject. We are of opinion that William J. Kelly, being in
possession of lands confessedly liable to the lien of the judg-
ments asserted in this cause, cannot escape that liability by
vouching the record of a suit in which no effort was made to
subject the land in question to those judgments, and in which
they could not have been enforced, as he was not a party to the
proceeding. As we have said, diligent effort was made in that
litigation to ascertain a subject upon which the lien of the

judgments therein reported could be enforced. None such was discovered, and the bill was dismissed; and we know of no authority and of no principle which forbids a judgment creditor, under such circumstances, to seek satisfaction out of property which he afterwards ascertains to be liable to his lien. We will not say that the judgment debtors in that case successfully concealed from their creditors the property out of which their demand might have been satisfied, but we do say that the failure of an effort made in good faith to subject property in that suit, which was held not to be liable, cannot be interposed as a bar to the enforcement of a lien upon other property confessedly liable, but for the unavailing effort.

Another error assigned rests upon the idea that the suits theretofore instituted by the judgment creditors to enforce their liens exhausted the vitality of those judgments, and that they are no longer subsisting causes of action. The precise principle invoked is, that a judgment is an indivisible cause of action, and that, when once an action is instituted upon it and prosecuted to a final judgment or decree, no other suit or action can be brought upon it. It is true, that a judgment is an indivisible cause of action in the sense that it may not be divided or split up into several causes of action. Subject to the discretion of courts in the imposition of costs, as many successive actions may be brought upon a judgment as may be needful in the opinion of the plaintiff, but there can, of course, be but one satisfaction. If it be true that but one bill to enforce a judgment can be maintained; if it be true that, by reason of the indivisibility of a judgment as a cause of action, a decree upon a bill filed to enforce it may be pleaded as an adjudication of all rights growing out of it, a creditor who has proceeded against his judgment debtor, and made an unavailing attempt to obtain satisfaction, would be precluded from asserting his lien, though his debtor might thereafter acquire property sufficient to satisfy his demand. This we know is not, and cannot be, true; but, if the

principle contended for exists, it must operate in all cases. To establish an exception, is to deny and refute its existence.

We are of opinion that a suit brought to enforce the lien of a judgment and prosecuted in good faith, though ineffectual, is not a bar to a subsequent suit by the same plaintiff against the same debtor to enforce satisfaction of the same judgment. In all such cases it will be the duty of the court to see that the creditor does not exercise his right capriciously or oppressively, and make such orders and decrees with reference to the imposition of costs as will protect litigants against unnecessary and vexatious suits.

The remaining error assigned is that the court erred in sustaining the exception of Hamblen and Kirkpatrick to the answer of William J. Kelly.

From that answer it appears that Logan & Brewer and Kirkpatrick had liens upon two tracts of land owned by J. J. Kelly, Jr., the title to which remained in J. J. Kelly, Sr., until 1897, which were worth more than the sum of the judgments sought to be enforced in this suit, and that Logan & Brewer, assignors of Hamblen, and Kirkpatrick, entered into a compromise with J. J. Kelly, Jr., who agreed to pay, and did pay, them one-third of their demands; whereupon a consent decree was entered reciting the compromise and dismissing the bill. This, we think, was error. If the facts stated in the answer be true, the land of J. J. Kelly, Jr., title to which remained in J. J. Kelly, Sr., until 1897, should have been subjected to the lien of the judgments to the exoneration of the lands of William J. Kelly, title to which J. J. Kelly, Sr., parted with as far back as 1894. See *Jones* v. *Myrick,* 8 Gratt. 179; *Building Association* v. *Fellers,* 96 Va. 337.

The answer also avers that J. J. Kelly, Sr., was the owner of a tract of land in Wise county, containing 396 acres, upon which the judgments in suit constituted liens, which should be subjected to the exoneration of the lands in the hands of his

alienees.    When a plaintiff excepts to an answer for insuffi-
ciency, he plants himself upon the proposition that, if the aver-
ments of the answer are sustained by proof, they constitute no
defence to the plaintiff's demand.    It seems manifest to us that,
if the defendant can show that other property of the principal
debtor, or property of an alienee from the principal debtor sub-
sequent to himself, is liable to the demands sought to be enforced
against him, he should be permitted to do so.

    We are of opinion that the Circuit Court erred in sustaining
exceptions to the answer of William J. Kelly, and for this cause
its decree is reversed.

*Reversed.*