# Richmond

## Mary K. Hyson, Et Al. v. Clarence C. Dodge, Et Al.

March 11, 1957.

Record No. 4615.

Present, All the Justices.

The opinion states the case.

*William B. McLeod* and *C. Jackson Simmons* (*Dunton, McLeod & Simmons*, on brief), for the appellants.

*Dixon L. Foster* and *George E. Allen* (*Sidney L. Berz; Garland Clarke; Allen, Allen, Allen & Allen; Norris, Richardson, Foster & Clarke*, on brief), for the appellees.

Hudgins, C. J., delivered the opinion of the court.

Mary K. Hyson, Edward Kelley, Jr. and Rufus Kelley, appellants in this court, respondents in the lower court, seek by this appeal to reverse a decree declaring that they have no title or interest in a certain 15 acre tract of land lying in White Chapel Magisterial District, Lancaster county, Virginia.

Both appellants and appellees, L. Purnell Saunders, Clarence C. Dodge and Jessie P. Dodge, trace their title back to John A. Kelley who died intestate on June 11, 1922, seized and possessed of the land in question. He was survived by his wife, Georgia Kelley, one sister, Sarah E. Williams, a brother, Edward Kelley, and a daughter, Ida V. Kelley, whose legitimacy is in dispute.

Appellants contend that Ida V. Kelley, whose first husband was Ford F. Ball and whose second husband was Joseph Johnson, was the illegitimate daughter of John A. Kelley and Catherine Braxton, a woman who never married; that on John A. Kelley's death title to the 15 acres passed to his sister and brother subject to his widow's right of dower, and that they acquired the undivided one half interest in the land that descended to Sarah E. Williams, as purchasers from her devisees, and the other one half interest as heirs of their father, Edward Kelley.

It is conceded that Sarah E. Williams, whose will was probated on January 20, 1927, devised, in a residuary clause, all her interest in any land she may have inherited from her brother, John A. Kelley, to Ida V. Ball, nee Kelley, (whom she described as her niece), for life, with remainder "to be equally divided among such children as she [Ida V. Ball] may leave at her death." Ida W. Ball, then Ida V. Johnson, died in June, 1954, survived by two sons, John Clifton Ball, Calvin Bernard Ball, and a daughter, Mary Ball Harris, who on August 15, 1955, conveyed their undivided interest, if any, in the lands of John A. Kelley to appellants.

Edward Kelley, sometimes called "Shadrach" Kelley, died intestate in 1945 survived by three children, Mary K. Hyson, Edward Kelley, Jr. and Rufus Kelley, appellants.

It follows that if Sarah E. Williams and Edward Kelley were the only heirs of John A. Kelley, the fee simple title to the land passed to appellants in whom it still is, unless they or their predecessors in title have been divested of title by some method known to the law.

Appellees contend that Ida V. Johnson, through whom they claim, was the legitimate daughter of John A. Kelley, and that even if she were illegitimate, and therefore not a lawful heir of her father, appellants are estopped from asserting any title or interest to the land in question.

On November 20, 1947, Ida V. Johnson and her husband executed a general warranty deed purporting to convey the 15 acres in controversy to L. Purnell Saunders, one of the appellees, and on December 6, 1954, he executed a deed of general warranty purporting to convey 5.9 acres of the same land to Clarence C. Dodge and Jessie P. Dodge, the other two appellees.

Appellees offered no evidence tending to prove that Ida V. Johnson was the legitimate child of John A. Kelley. They contend that under Code, § 8-276.1, they had a right to rely upon the state-

ment made in the deed of November 20, 1947 from Ida V. Johnson and her husband to L. Purnell Saunders to the effect that: "and being a portion of the land of which John A. Kelley died intestate seized and possessed and which descended to his daughter, Ida B. Johnson, his sole heir at law. (Title not examined)."

The statute provides that where no qualification has been had upon a decedent's estate and no list of heirs has been filed in the court, or clerk's office, of the county or city wherein the property lies, a deed of conveyance in the chain of title stating that the grantors therein are all the heirs at law of an intestate decedent shall be *prima facie* evidence of that fact. This simply means that such a statement suffices for the proof of the identity of the heirs until the truth of the statement is contradicted and overcome by other evidence. The introduction of such a statement shifts the burden of going forward with the evidence to the litigant contending to the contrary. This the appellants did by introducing the testimony of eight witnesses, some of them kinsmen of Catherine Braxton, the unmarried mother of Ida V. Johnson.

The testimony fully supports the trial judge's finding of fact on this issue, stated in his opinion thus: "In the first place I have listened to all of the witnesses—not only to what they said, but how they said it. I have observed their attitudes, and their mannerisms. In this case I was very much impressed with the Kelley witnesses. I call particular attention to the lady who was a school teacher. It was testified that Ida had had an education in a New York school. I don't recall the names of some of the others. They made excellent witnesses, I thought. As I understand it, by a preponderance of the evidence in this case, she was not the legitimate child of John Kelley. I certainly am convinced that she was an illegitimate child."

This brings us to appellees' second contention, namely, that the doctrine of estoppel bars appellants from successfully asserting any right, title or interest in the land. Thus the dominant question presented is whether or not the evidence justifies the application of the doctrine of equitable estoppel against the appellants.

An estoppel is that which prevents one from showing the truth in defense of his rights, "* * * call it by what name we will, it is that which shuts out the evidence of the actual truth of the case." *Baker v. Preston*, 21 Va. (Gilmer) 235, 300; 7 Michie's Jur., Estoppel, § 2, p. 240.

The evidence upon which appellees rely to estop appellants from

showing the truth in defense of their rights to the one half undivided interest that descended to them as heirs of Edward Kelley, is that: (1) Ida V. Kelley paid the taxes and claimed to be the sole heir of her father, John A. Kelley, (2) neither Edward Kelley nor his heirs took any legal action to assert their rights to the land until the spring of 1955, when the latter filed an answer and cross bill in this suit, and (3) Edward Kelley told L. Purnell Saunders that Ida V. Johnson had a "perfect right" to sell the land.

As heretofore stated, it is conceded that when John A. Kelley died in 1922, he owned the 15 acre tract of unimproved woodland. There was no qualification on his estate or list containing the names of his heirs filed as required by Code, § 64-127. In any event, a purchaser of decedent's land could not be sure of obtaining a good title unless he ascertained from and *dehors* the record the names of all the legal heirs of decedent.

It does not appear from the record who took possession of the property upon the death of John A. Kelley or when his widow, Georgia Kelley, died. It does appear that the widow was living on September 1, 1932, when she, as widow, joined in a deed with Ida V. Johnson, then Ida V. Ball, conveying two acres of land to another party. At that time both Ida V. Ball and Edward Kelley were entitled to possession of the property subject to the dower right of the widow; Ida V. Ball as a life tenant under the will of Sarah E. Williams and Edward Kelley as an heir of his brother. The inference from the testimony is that Ida V. Ball assumed possession of John A. Kelley's estate. She paid the taxes assessed on land of his estate from 1932 until 1951, and thereafter the same was paid by her son, John C. Ball of Baltimore. However, it does not clearly appear that any tax was assessed on the 15 acre tract in controversy. In any event, possession and payment of taxes on land by one tenant in common inures to the benefit of the other cotenants. 2 Minor on Real Property (Ribble, 2d ed.), § 877, p. 1113; 5 Michie's Jur., Cotenancy, § 17, p. 48. "[W]here one enters into possession under a lawful title to a particular estate in the premises, he is presumed to continue to hold possession under that title until he commits some notorious act of ouster or adverse possession, which is *brought home* to the *knowledge* and *notice* of those entitled either with or after him." *Hannon* v. *Hounihan*, 85 Va. 429, 438, 12 S. E. 157.

Appellees introduced several deeds made by Ida V. Johnson conveying other lands of which John A. Kelley died seized and pos-

sessed to various parties wherein it is stated that she was the daughter of John A. Kelley and his only heir, and contend that the recording of·these. deeds was notice to appellants and their father that Ida V. Johnson was claiming the fee simple title to all the land of which her father died seized and possessed. It is to be noted that none of these deeds was in the chain of title to the land in question.

This court in *Bridgewater Mills* v. *Strough*, 98 Va. 721, 724, 37 S. E. 290, quoted with approval from Pomeroy on Equity, § 657, the following: " 'It is a fundamental proposition, therefore, established with complete unanimity, that a registration properly made does not operate as constructive notice to all the world, but only to those persons who, under the policy of the legislation, are compelled to search the records in order to protect their own interests. It is equally well settled that such record is not notice to the holders of antecedent rights—that is, to those who have acquired their rights before the time when the record is made—and this is so even when the antecedent right may, in pursuance of the statute, be defeated by the fact of the prior record. In other words, the registration of an instrument does not act *as a notice* backwards in time.' "

We held in *Building Ass'n* v. *Fellers*, 96 Va. 337, 31 S. E. 505, that the registration of a deed by a subsequent purchaser was no notice to a party who had acquired his rights before the date the deed was recorded. Neither the language nor the policy of the recording acts was intended to affect the holders of antecedent rights, but only such persons as are required to search the records to protect their own interests.

As an additional ground of estoppel, appellees contend that the illegitimacy of the daughter was so well known that Edward Kelley and appellants were charged with notice of that fact. If this fact were so well known, why did appellees accept a deed from her in which she is described as daughter and sole heir of her father? Why should appellants be charged with knowledge of the illegitimacy of the daughter and appellees not be so charged? There is no evidence tending to prove that Edward Kelley knew that Ida V. Johnson was the illegitimate child of his brother or the nature of the interest he inherited from him. While witnesses living in the community testified that they knew that Ida V. Johnson was illegitimate, they also said that this was a question the older people did not discuss.

Edward Kelley, sometime prior to the death of his brother, John A. Kelley, separated from his wife, left her and his children in Lan-

caster county and moved out of Virginia and remained out until sometime in the early 1940's, during which period he never saw nor communicated with his children, who had remained with their mother. Upon his return to Lancaster county he moved into the old home of John A. Kelley and claimed an interest in the lands of which his brother died seized and possessed.

Mary K. Hyson, one of the appellants and a daughter of Edward Kelley, testified that neither she nor her brothers knew or saw her father from approximately 1909 until 1944, when she returned to Lancaster county, having lived in New York from the early 1930's She also testified that within a year before her father died, he told her that he had some interest in the land formerly owned by John A. Kelley, but he did not know and could not tell her the nature of his interest. She did not know Ida V. Johnson until during her father's last illness and never saw her again after his death. She did not know that Ida was an illegitimate child of John A. Kelley until the spring of 1955, when it was brought out during the trial of another suit in the Circuit Court of Lancaster county. As soon as she was informed of this fact she employed counsel to establish her and her brother's rights to the land in this litigation.

■ The statements of Edward Kelley upon which appellees rely to work an estoppel against appellants were made under the following circumstances as appear from the testimony of appellees' witnesses. Wakeman Dilver testified that in 1943 he made a contract with Ida V. Johnson to buy the 15 acre tract, paid her $25.00 on the purchase price with an unlimited time in which to pay the balance. After the contract was made Edward Kelley visited his home. During this visit he told Edward about buying the property and Edward then stated that "it was perfectly alright to buy it from Ida," and if he did not want to buy the property "Mr. Saunders will buy it." Saunders testified that sometime between 1942 and 1944, Edward Kelley shucked oysters for him for about two weeks. He was asked:

"Q. At that time were you inquiring about the 15 acre tract of land?

"A. Ida wanted to sell it, and she sent me word I could get the land anytime I wanted it. Waitman [Wakeman] had a deposit against it but she didn't think he could buy it on those terms. She said if I could buy the deposit I could buy it any time.

"Shadrack told me he had talked with Ida last night, and she told me I could buy it anytime I wanted it. If I needed anything off the

land—any deal I made with her would be perfectly all right. She has a perfect right to sell anything there."

Saunders did not buy the land until November 20, 1947, more than two years after Edward Kelley's death. Under these circumstances it is unbelievable that Saunders relied upon this loose statement of Edward Kelley as an inducement to buy the property. In fact he does not say in his testimony that he did. Furthermore, it is stated in the deed to him from Ida V. Johnson that the land descended to Ida V. Johnson, the "daughter" and "sole heir at law" of John A. Kelley.

The foregoing evidence does not bring the case within the principles of equitable estoppel. These principles have been frequently stated by this court and were applied by Mr. Justice Spratley in *Heath* v. *Valentine*, 177 Va. 731, 738, 15 S. E. 2d 98, where he said:

" 'It may be stated, as a general rule, that the representation or concealment relied on to sustain an estoppel must have been made with full knowledge of the facts by the party to be estopped, unless his ignorance was the result of gross negligence or otherwise involves gross culpability, as where he is consciously ignorant of the facts at the very time of professing full knowledge of them.' 2 Amer. & Eng. Enc. L. (2d Ed.) 433-4. * * *

" 'But with respect to the estoppel under consideration which affects the title to real estate, there must be the express intention to deceive, or such careless and culpable negligence as amounts to constructive fraud.' [*Chesapeake & O. R. Co.* v. *Walker*, 100 Va. 69, 94, 40 S. E. 633].

\*        \*        \*        \*        \*        \*        \*

"The burden of proof rests on a party setting up estoppel *in pais*.

" 'In *Newport News R. R. Co.* v. *Lake*, 101 Va. 334, 43 S. E. 566, discussing estoppel, the court said: 'The principles which estop a person from claiming what is conceded to be his own property are highly penal in their nature, and the authorities uniformly hold that estoppels *in pais* are not to be taken by argument or inference, but must be certain to every intent. The burden of proof rests on the party relying upon an estoppel, and it must be made to appear affirmatively by clear, precise, and unequivocal evidence. * * *

" 'Experience has shown that in controversies involving title to real estate it is far safer to rely on written muniments of title than 'the slippery memory of men.' Hence parol defeasances in such cases are

not favored.' " See also, *Thomasson* v. *Walker*, 168 Va. 247, 190 S. E. 309, 110 A. L. R. 593; *Moyers Coal Corporation* v. *Whited*, 157 Va. 302, 160 S. E. 43; *Blanford* v. *Trust Co. of Norfolk*, 142 Va. 73, 128 S. E. 640, 63 A. L. R. 1158; *Chesapeake & O. R. Co.* v. *Walker*, 100 Va. 69, 40 S. E. 633.

▮ Appellees also contend that appellants' right to the one half undivided interest purchased by them from the children who survived Ida V. Johnson is likewise barred by the doctrine of equitable estoppel.

As heretofore stated, John Clifton Ball, Calvin Bernard Ball and Mary Ball Harris, the children who survived their mother, Ida V. Johnson, had no right to possession of the land until June 1954, when the life tenant died. There is no evidence tending to prove that they or any of them did or said anything inconsistent with their rights as contingent remaindermen. In the short time after their right of entry accrued, they conveyed their interest in the property to appellants who said and did nothing thereafter that would work an estoppel against them.

In 33 Am. Jur., Life Estates, Remainders, and Reversions, § 193, p. 667, it is said: "A contingent remainderman cannot, so long as the remainder remains contingent, be estopped by a conveyance by the life tenant and the making of improvements by the grantee. Where there is a sale by the life tenant the rule is that remaindermen who do not participate in the sale by the life tenant are not bound to proceed against the purchaser or give him notice until the accrual of their title. Before an estoppel can be urged against the remaindermen, they must have done some act whereby they derived a benefit or prejudiced another." See also, *Phillips* v. *Wells*, 147 Va. 1030, 133 S. E. 581; 31 C. J. S., Estates, § 85, p. 97.

▮ L. Purnell Saunders, one of the appellees, moved to dismiss the appeal on the ground that counsel for appellants did not give him or his counsel " 'a reasonable opportunity to examine the original or a true copy of' the transcript before it was presented to the Judge for certification," in accordance with Rule 5:1, § 3(f). The Rule itself provides in part that: "The signature of the judge, without more, will be deemed to be his certification that counsel had the required notice and opportunity, and that the transcript or statement is authentic."

It is conceded that the written notice was mailed on February 9, 1956 to Sidney L. Berz, who was the only counsel for Saunders who had actively participated in the trial, and was received by him on

February 10th, stating that the transcript would be presented on Tuesday, February 14th. It was so presented, and was signed by the trial judge on February 23rd. There is no merit in this motion as conclusively appears from the certificate of the trial judge, wherein he said:

"It further appears that no member of the firm of Allen, Allen, Allen & Allen, nor Mr. Berz at any time inquired of" other counsel in the case "or of the Clerk, or Judge of this Court as to the availability or location of the transcript of the evidence in this cause, nor did they, as did counsel for the complainants, procure for themselves a copy of said transcript. It was their duty to secure a transcript if they desired one, as was done by Messrs. Morris, Richardson, Foster & Clarke; Mr. Berz employed Mrs. Bleecker S. Pollard, the Court Reporter in this case, and was fully aware that she could furnish such copy or copies of the transcript as he might require.

"I further certify that on February 14th, 1956, when the said transcript was presented to me, Sidney L. Berz was present and attended the presentation of the transcript, noting necessary corrections for a period of about five hours out of the period of about six and one-half hours which was required for the complete examination and correction of the said transcript; and that the said Sidney L. Berz, without offering any good reason therefor, simply withdrew from the conference considering said transcript about one and one-half hours before its completion. During the conference at the time of the presentation of said transcript, the same was thoroughly examined and discussed page by page, and ample opportunity was afforded by the Court to all counsel present to present any proposed corrections desired by them."

The motion to dismiss the appeal is overruled, the decree reversed and the case remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*