# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

|   |   |
|---|---|
| 98 | 721 |
| 101 | 61 |

BRIDGEWATER ROLLER MILLS CO. V. STROUGH, GUARDIAN.

DECEMBER 6, 1900.

Absent, Phlegar, J.*

1. DEEDS OF TRUST—*Subsequent Alienations by Grantor—Release of Part by Trust Creditor—Notice.*—Ordinarily, when the equities of the various owners of land subject to a deed of trust are unequal, so that their respective parcels are liable in the inverse order of alienation, if the deed of trust creditor, having notice of this situation, releases a parcel which is primarily liable, he thereby discharges or releases those parcels which are subsequently liable in the order of their several liabilities, from an amount of the deed of trust debt equal to the value of the parcel released.

2. DEEDS—*Recordation—Effect on Prior Purchaser—Notice.*—The registry of a deed by a subsequent purchaser is no notice to parties who have acquired their rights before the time when the deed is registered.

3. DEED OF TRUST—*Subsequent Alienation by Grantor—Notice.*—To affect a prior mortgagee with notice of a subsequent deed made by the mortgagor, actual notice to the mortgagee must be shown, and the proof must be such as affects his conscience. It is not sufficient if it merely puts him upon inquiry. It must be so strong and clear as to fix upon him the imputation of *mala fides.*

Appeal from a decree of the Circuit Court of Rockingham county, pronounced in the chancery causes of *Strough, Guardian,* v. *Berlin and Others,* and *Berlin's Creditors* v. *Berlin's Adm'r and Others,* heard together.

*Affirmed.*

The opinion states the case.

*This case was argued and submitted before Judge Phlegar qualified.

*W. Liggett, O. B. Roller & Martz*, and *Yancey & Haas*, for appellant.

*Sipe & Harris*, for appellee.

CARDWELL, J., delivered the opinion of the court.

This case is as follows: George W. Berlin was the owner of two properties at Berlinton, near Bridgewater, in Rockingham county; one, his place of residence, spoken of in the record as "The Mansion House" property, and the other as the "Mills" property. By deed dated December 22, 1890, both of these properties were conveyed by George W. Berlin to Samuel L. Slusser, trustee, to secure Susan C. Strough, as guardian for her children, the payment of a bond in the sum of $2,136, executed to her by George W. Berlin for borrowed money. By deed dated May 29, 1893, George W. Berlin, for the recited consideration of $5,000, conveyed a one-half interest in the "Mills" property to E. L. Berlin, his son. On August 31, 1893, George W. Berlin and E. L. Berlin conveyed the "Mills" property to "The Bridgewater Roller Mills Co.," for the recited consideration of $12,000. March 15, 1894, George W. Berlin conveyed "The Mansion House" property (which he still retained, subject only to Mrs. Strough's deed of trust) to William L. Yancey, trustee, to secure to the Baltimore Building and Loan Association the payment of a loan of $2,000, at the time made to him, and Mrs. Strough, guardian, in consideration of the payment to her, as a credit upon the debt due her by George W. Berlin, of $500 out of the money loaned to him by the Baltimore Building and Loan Association, joined in this deed, for the purpose, as expressed in the deed, of making her said deed of trust of December 22, 1890, as to the "Mansion House" property, subordinate and inferior to the lien created by this deed on the "Mansion House" property in favor of the Baltimore Building and Loan Association, "for this purpose,

and no other." May 14, 1894, "The Bridgewater Roller Mills Co." conveyed the "Mills" property, now spoken of as "The Bridgewater Roller Mills" property, which had been conveyed to it by Geo. W. and E. L. Berlin, to Wm. L. Yancey, trustee, to secure the Baltimore Building and Loan Association the payment of a loan of $2,000, at that time made to "The Bridgewater Roller Mills Co." All of the above mentioned deeds were duly admitted to record. George W. Berlin died in November, 1895, and shortly thereafter, a suit was brought in the Circuit Court of Rockingham county, styled *Geo. W. Berlin's Crs. v. Geo. W. Berlin's Adm'r, &c.*, for the purpose of settling up his estate, which was insolvent. Subsequently Mrs. Strough, as guardian for her children, filed her original and amended bill in the same court against the same defendants as in the first named suit, and "The Bridgewater Roller Mills Co." to subject "The Bridgewater Roller Mills" property to the payment of the balance due the complainant upon the debt secured to her by the deed of December 22, 1890, to Samuel L. Slusser, trustee; the "Mansion House" property having been sold for not more than enough to pay the debt of the Baltimore Building and Loan Association. In this suit there was a decree of reference, in which a number of inquiries were directed to be made by the commissioner covering all the questions raised by the bills and answers. The commissioner to whom the cause was referred reported that the lien of Mrs. Strough, guardian, on "The Bridgewater Roller Mills" property, under the deed to Samuel L. Slusser, trustee, of December 22, 1890, was superior to that of the deed to William L. Yancey, trustee, of May 14, 1894, securing the Baltimore Building and Loan Association the debt of $2,500 borrowed from it by "The Bridgewater Roller Mills Co."; and that as Mrs. Strough, guardian, did not have actual notice of the conveyance from George W. Berlin to E. L. Berlin, or of the conveyance from George W. and E. L. Berlin to "The Bridgewater Roller Mills Co.," recorded respectively

September 14 and 16, 1893, her lien was also binding upon the mill property in the hands of "The Bridgewater Roller Mills Co.," and superior to any rights it had in the property. Upon the hearing of the two causes of *Susan C. Strough, Guardian,* v. *Berlin, &c.,* and of *G. W. Berlin's Crs.* v. *Berlin's Adm'r,* &c., the Circuit Court decreed that Mrs. Strough had no such notice of the alleged rights of the Baltimore Building and Loan Association, or of "The Bridgewater Roller Mills Co.," or of E. L. Berlin, under whom it claimed, at the time she executed the release on the "Mansion House" property, as would, by virtue of her release thereof, subordinate her lien either to that of the Baltimore Building and Loan Association, or to the rights of those through whom it claimed, on the Mill property, confirmed the report of the commissioner in so far as it gave priority to the rights of Mrs. Strough over the Baltimore Building and Loan Association and E. L. Berlin and of "the Bridgewater Roller Mills Co.," and directed a sale of the Mill property to satisfy the liens thereon.

From this decree "The Bridgewater Roller Mills Co." obtained an appeal to this court.

" Ordinarily, when the equities of the various owners of lands subject to a deed of trust are unequal, so that their respective parcels are liable, in the inverse order of the alienation, if the deed of trust creditor, having notice of this situation, releases a parcel which is primarily liable, he thereby discharges or releases those parcels which are subsequently liable, in the order of their several liabilities, from an amount of the deed of trust debt equal to the value of the parcel released. But this effect of the release may be obviated by the conduct of the parties to be affected." 3 Pom. Eq., sec. 1226; *Building Ass'n* v. *Fellers,* 96 Va. 337.

" It is," says Mr. Pomeroy (Pom. Eq., section 657), "a fundamental proposition, therefore, established with complete unanimity, that a registration properly made does not

operate as constructive notice to all the world, but only to those persons who, under the policy of the legislation, are compelled to search the records in order to protect their own interests. It is equally well settled that such record is not notice to the holders of antecedent rights—that is, to those who have acquired their rights before the time when the record is made—and this is so even when the antecedent right may, in pursuance of the statute, be defeated by the fact of the prior record. In other words, the registration of an instrument does not act *as a notice* backwards in time."

In *Building Ass'n* v. *Fellers, supra,* the opinion by Buchanan, J., says, that while the question had never been passed upon by this court, it is well settled, both upon principle and authority, that the registry of a deed by a subsequent purchaser is no notice to parties who have acquired their rights before the time when the deed is registered. Neither the language nor the policy of the registry acts was intended to affect the holders of antecedent rights, but only such persons as are compelled to search the records in order to protect their own interests.

It is clear, therefore, that the rights of Mrs. Strough, guardian, were in no way affected by constructive notice arising out of the recordation of the conveyance of a one-half interest in the " Mills " property by George W. Berlin to E. L. Berlin, or of the conveyance by George W. Berlin and E. L. Berlin of the "Mills" property to "The Bridgewater Roller Mills Co."

The remaining question of importance, and the only one that we need consider, is, did Mrs. Strough, guardian, have actual notice of the conveyance by George W. Berlin to E. L. Berlin, or of George W. and E. L. Berlin to "The Bridgewater Roller Mills Co.," admitted to record in September, 1893?

Sheldon, in his work on Subrogation, section 81, citing a number of authorities in support of the text, says: " That a mortgagee is not bound to take notice of subsequent liens or conveyances, or of litigation which arises concerning them; and

subsequent purchasers of portions of the mortgaged premises who desire him to act with reference to the order of subsequent alienations by the mortgagor, must notify him of the fact in proper time, and request him to act accordingly.  *  *  *  * If a release of a part of the mortgaged premises was given without notice of the equities of the subsequent incumbrancer or grantee, the first mortgagee who gave it is not responsible for the consequences of his act, nor is the lien of his mortgage upon the unreleased portion of the premises in anywise impaired thereby."  *  *  *

There is not the slightest pretence in this case that any such action was taken by E. L. Berlin or "The Bridgewater Roller Mills Co.," and there is no proof whatever that E. L. Berlin or "The Bridgewater Mills Co." notified Mrs. Strough at any time of their respective purchases.  The reliance to establish *actual notice* to Mrs. Strough of the conveyance from George W. Berlin to E. L. Berlin and of George W. and E. L. Berlin to appellant, "The Bridgewater Roller Mills Co.," rests solely upon the following facts and circumstances, claimed to have been proven—to wit:

" 1st. Mrs. Strough lived within a quarter of a mile of the mill, and not only was the Milling Company in open and notorious possession of the property, but its acquisition of the title and possession marked a new departure in the business conducted there, the property being converted from a bone mill into a roller process flouring mill, many improvements being made, and much new machinery being placed in the mill."

" 2d. Mrs. Strough dealt at the mill after it was converted into a flour mill, and ran an account there, buying flour and other supplies, the sacks, containing the flour she bought, bearing the stamp of the Bridgewater Roller Mills Company, as did also the stationery of the company on which its bills were rendered."

" 3d. The *Bridgewater Herald,* a newspaper published at Bridgewater by G. R. Berlin (son of George W. Berlin), and a stockholder of the company, contained conspicuous advertisements of the Milling Company, and Mrs. Strough was a subscriber for this paper, and her son, who lived with her, worked in the printing office where it was printed and assisted in printing them, as he also assisted in the work of printing the stationery of the company."

" 4th. Mrs. Strough, according to the testimony of G. R. Berlin (a son of George W. Berlin), corroborated by J. W. Click, first called as a witness for Mrs. Strough, was approached in the presence of the witness in the fall of 1893, by his father, and asked to take stock in the Milling Company."

" 5th. The deed of March 15, 1894, by which Mrs. Strough subordinated her lien on the " Mansion House " property to that of the Building and Loan Association, described the Mansion House property so released as adjoining the properties of Henry Cromer's estate, John Thuma, P. W. Roller, and the *Bridgewater Roller Mills Co.*"

We shall not attempt to review the evidence in detail, which it is claimed establishes the foregoing facts and circumstances, for, leaving out of view, as did the Circuit Court, the statement of Mrs. Strough denying that she had any sort of notice of a change of the title to the " Mills " property before, or at the time, she united in the deed of trust given by George W. Berlin to Yancey, trustee, March 15, 1894, to subordinate her prior lien on the " Mansion House " property to that of the Baltimore Building and Loan Association for the loan it then made to George W. Berlin, and also the evidence going to show that Mrs. Strough is an " unlettered woman," we are of opinion that it may be conceded that all the foregoing facts and circumstances, relied on by appellants, are shown by the evidence, still

this character of notice is not within the definition of the law as to what constitutes actual notice in such cases.

" Proof of actual notice must be such as affects the conscience of the party sought to be charged with such notice, and it is not sufficient if it merely puts him upon inquiry, but must be so strong and clear as to fix upon him the imputation of *mala fides.*" *Mundy* v. *Vawter*, 3 Gratt. 520; *Hord* v. *Colbert*, 28 Gratt. 58; *Newberry* v. *Bank of Princeton*, 98 Va. 471; *Ferguson* v. *Daughtrey*, 94 Va. 308; *Fischer* v. *Lee*, 98 Va. 159.

The proof of this case utterly fails to show that Mrs. Strough had actual notice of the equities claimed by appellants when she united in the deed of March 15, 1894.

What we have already said disposes of the contention of counsel for appellant upon their brief, that though it be held that Mrs. Strough had no such notice of the deed from G. W. Berlin to E. L. Berlin or of that from them to the appellant, as would bar her right to subject the " Mills " property to the payment of the balance of her debt secured by the deed to Slusser, trustee; yet her deed still binds the "Mansion House" property as a lien paramount to that of the Baltimore Building and Loan Association under the deed of March 15, 1894, and she should be required first to subject the " Mansion House" property. To hold now that Mrs. Strough should be required to look to the " Mansion House" property for satisfaction of her debt, when she would be met and defeated by her own express waiver of her lien upon it in favor of the Baltimore Building and Loan Association, which, as we have held, she had a right to waive under the circumstances then surrounding her, would be to argue in an unending circle.

The decree appealed from is affirmed.

*Affirmed.*