BRIDGEWATER ROLLER MILLS CO. v. RECEIVERS OF BALTIMORE
BUILDING & LOAN ASS'N.

(Circuit Court, W. D. Virginia. August 4, 1903.)

1. MORTGAGES—PURCHASER OF PORTION OF MORTGAGED PROPERTY—RELEASE
OF OTHER PROPERTY BY MORTGAGEE WITHOUT NOTICE OF ALIENATION.
    A purchaser of one of two parcels of real estate which were subject to the same mortgage, who neglected to notify the mortgagee of the purchase, thereby lost the right to insist that the other parcel should first be subjected to the mortgage as against a subsequent mortgagee thereof, to whom the first mortgagee released in ignorance that any of the property had been alienated by the mortgagor.

So far as essential to an understanding of the following opinion, the facts may be stated as follows:

G. W. Berlin, being the owner of two parcels of land known respectively as the "mansion house" and the "mill property," mortgaged both of them to Mrs. Strough. Thereafter Berlin conveyed the mill property to the Bridgewater Roller Mills Company (to be hereafter styled the "Mill Company"), which duly recorded its deed, but gave no actual notice to Mrs. Strough of this alienation. Thereafter Berlin applied to the Baltimore Building & Loan Association (to be styled hereinafter the "Association") for a loan to be secured by mortgage on the mansion. The association declined to make the loan unless Mrs. Strough would release to it her mortgage on the said prop-

erty; and in consideration of the payment to her of a part of the sum which Berlin had applied to borrow, she, still being ignorant of the alienation of the mill property, made a release of the mansion house property to the association. Still later the mill company applied for and obtained a loan from the association, secured by mortgage on the mill property. Thereafter Mrs. Strough brought her suit to foreclose her mortgage on the mill property. In this suit, in which both the mill company and the association were parties, it was decreed that the mill property be sold to satisfy, in their order, the mortgage of Mrs. Strough and the mortgage of the association on the mill property. This property has been sold, and the fund is now in court. In the meantime the association brought its suit against Berlin, and foreclosed its mortgage on the mansion house, which at the sale brought only enough to satisfy the lien of the association. The mill company has filed its petition praying that the claim of the association against it be abated by the amount brought by the mansion house property at the sale.

Roller & Martz and Winfield Liggett, for plaintiff.

T. N. Haas, for defendant.

McDOWELL, District Judge (after stating the facts as above). In view of the conclusion I have reached on the merits, it is not necessary to express an opinion on the question raised by the plea of res judicata.

While the state of facts existing here is unusual—so much so that no authority treating of a similar state of facts has been cited—I am of opinion that the case on the merits is with the association. The question presented is somewhat complex, arising from the fact that the association occupies the dual position of mortgagee of G. W. Berlin and releasee of Mrs. Strough, as to the mansion house property. However, the controlling fact in the case to my mind is that the mill company was negligent in failing to give Mrs. Strough notice that it had purchased the mill property. This negligence left Mrs. Strough free to release or subordinate her claim on the mansion house without thereby impairing her rights against the mill property. Bridgewater Mills Co. v. Strough, 98 Va. 725, 37 S. E. 290. But, since all persons are presumed to know the law, of what value would this right be to Mrs. Strough if the releasee did not get that which he bargained for? Her power to make such release would be utterly valueless. And to hold that such release does not protect her releasee is to argue in a circle. It is to say that the mill company's negligence merely results in requiring it to proceed in a roundabout way to avoid the effect of the release. The nearest analogy that has been suggested, or that occurs to me, is the case of a purchaser with notice from a purchaser without notice. A., owner of a tract of land, mortgages it to B., who does not record his mortgage. A. then sells and conveys the same land to C., who becomes a complete purchaser for value, and without notice of B.'s mortgage. Under such circumstances C. acquires an indefeasible title, and, if B. should now record his mortgage, and if C. should thereafter convey to D., he also would acquire an indefeasible title. D. is protected, despite his knowledge of B.'s unpaid and now recorded mortgage. It may be said that the analogy is imperfect in that B.'s right was irretrievably lost when C. purchased, and that D. has not put B. in any worse position than he was before. But this is not sound. If D. were held

not to get good title, the result would be that B.'s right would only be suspended until C. sells the land. But the law is settled that D. acquires an indefeasible title. And the reason for it is that to hold otherwise would render C.'s title an unmarketable one. The benefit to C. coming from his innocence would be quite imperfect if he could not pass a good title to his purchaser. In the case at bar the negligence of the mill company gave to Mrs. Strough an indefeasible right to release the mansion house; a right good as against the mill company, and good as between her and the association. And to say that the taking of this release does not shield the association as against the mill company is to say that Mrs. Strough had not the right to make it. To so hold is to say, first, that the mill company has not lost its rights, but has merely been delayed in asserting them; and, second, it is to say that Mrs. Strough's supposed right is valueless to her. No one knowing the law (if this is the law)—as all persons are presumed to do—would give Mrs. Strough a valuable consideration for such a release. The benefit to Mrs. Strough of the right to release the mansion house lay in the value she could get for such release from a proposing purchaser or mortgagee of the mansion house, who would have at least constructive notice of the alienation to the mill company. Sheldon, Subrogation, § 75.

I think a release made by Mrs. Strough to Berlin would have been ineffectual. The injustice involved in allowing Berlin to pay his debt with the property of the mill company is so great that to this extent Mrs. Strough's right to release is restricted. Thus, in the case of an innocent purchaser, it is held that he can pass a good title to any one with notice, except to his vendor. 2 Pom. Eq. Jurisp. § 754. And in the case at bar, if Mrs. Strough had made the release to G. W. Berlin, and if Berlin had thereafter mortgaged the mansion house to the association, I am inclined to think that the release would not have availed the association. Under such circumstances the association could have had no higher rights than Berlin. But as we have the case, Mrs. Strough released directly to the association. It stands in a position similar to that of a purchaser with notice (other than the vendor) from a purchaser without notice. To grant the relief prayed for by the mill company, we must treat the association merely as the successor in interest of G. W. Berlin. So to do is to lose sight of the fact that the association is the direct grantee of a right, given Mrs. Strough by the negligence of the mill company, to impose the whole of Mrs. Strough's debt on the mill property. And the relief asked by the mill company is, in effect, that the burden of this debt be put back on the mansion house. If Mrs. Strough had this right, she had the power to effectually pass it to any one except G. W. Berlin.

The petition of the mill company should be dismissed, with costs to the association.