CONTINENTAL CASUALTY
COMPANY, Appellant,

v.

William S. BURTON, Audrey H.
Buckner, Mary R. Thweatt,
Appellees.

No. 85–1987.

United States Court of Appeals,
Fourth Circuit.

Argued April 9, 1986.

Decided July 21, 1986.

Philip J. Walsh (Charles J. O'Hara, Bromley, Brown & Walsh, Washington, D.C., on brief) for appellant.

Christopher M. Malone (Thompson & McMullan, Richmond, Va., on brief) for appellee Audrey H. Buckner.

Charles H. Cuthbert, Jr., Petersburg, Va., for appellee Mary R. Thweatt.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Continental Casualty Company appeals an order of the district court that denied its application for a declaratory judgment. Continental sought to be absolved from liability to Mrs. Audrey Buckner and Mrs. Mary Thweatt under a legal professional's liability policy issued to William Burton, a lawyer. The district court held that Burton's conduct was covered by the policy, that Continental failed to prove facts establishing an exclusion from coverage, and that the defense of breach of the insured's duty to cooperate was not available to Continental. We affirm.

I

In 1974, Burton assisted Mrs. Buckner, his cousin, in settling her husband's estate. At that time Mrs. Buckner entrusted funds to him which he said he would pool with other funds for investment in his name at a higher interest rate than her individual funds could bring. Mrs. Buckner was to receive income from her investment on a monthly basis. As compensation for his services, Burton was to receive a percentage of the gross income earned on the investment.

From 1974 to 1981, Mrs. Buckner delivered to Burton sums totaling $50,000. Burton signed various demand notes for the money he received. On September 15, 1982, he signed a demand note for the full $50,000, which stated that he held the money in trust for the benefit of Mrs. Buckner and that the note would bear interest at the rate being earned on a certificate of deposit 408–8 lodged with First Colonial Savings and Loan Association. From 1974 through December 1983, Burton sent Mrs. Buckner

monthly checks, which represented her share of the interest earned by her money. During this period Burton also performed various legal services for Mrs. Buckner, for which he was compensated.

At one time Mrs. Buckner was under the impression that her money had been invested in certificate of deposit 408–8. She gained this impression only from the note, and she testified that Burton never told her that her money was invested in this certificate of deposit. Records from First Colonial disclose that such a certificate existed in Burton's name and that it was pledged by Burton as collateral for a loan on September 15, 1981. The certificate was redeemed by the institution on January 15, 1984, after Burton defaulted.

In November 1983, Mrs. Buckner asked for return of $10,000. Burton told her that her funds were in an investment which had not matured, but he could obtain her $10,000 if she really wanted it. Mrs. Buckner told Burton that she would not push for the money but as soon as the note came due she wanted to talk to him about handling her investments herself because the new office to which Burton was moving would be far from her home.

Burton visited Mrs. Buckner at her home on January 4, 1984. Mrs. Buckner's evidence is unclear whether she then demanded the return of all her funds or told Burton that she wanted to discuss the return of all her funds when the investment matured. She testified that she made no demand, but her complaint in a civil action against Burton alleged that she did.

Mrs. Buckner has not been able to contact Burton since that time. She has received no payments from him since December 1983 and has not been able to locate her funds. After learning of Burton's disappearance, Mrs. Buckner obtained a judgment against him in state court for $50,000.

In early 1982, Burton represented Mrs. Thweatt in connection with the estate of her husband. Between January 6 and March 18, 1982, Mrs. Thweatt entrusted over $140,000 with Burton, for which he executed seven demand notes. Mrs. Thweatt's agreement with Burton was substantially the same as Mrs. Buckner's. Burton made monthly payments to Mrs. Thweatt as her share of the interest.

On January 6, 1984, Burton paid a visit to Mrs. Thweatt at her home, and she gave him a written demand for the return of her money by January 11. Burton replied that he would try to get her money for her. Mrs. Thweatt testified that because Burton was moving his office she thought he would be too far away for communication. Mrs. Thweatt has had no further contact with Burton since that time. On January 9, counsel for Mrs. Thweatt hand delivered to Burton's residence a letter demanding return of Mrs. Thweatt's funds by January 12. On January 20, 1984, Mrs. Thweatt filed an action against Burton in state court which resulted in a judgment against Burton for $140,000.

On January 9, 1984, Burton went to Colorado to visit a gold mining company in which he had invested.[1] Around January 12, during a telephone conversation, Burton's wife informed him that Mrs. Thweatt's counsel had written to demand her funds. Burton dictated a letter that he would be in Colorado until the 17th and that payment would be made to Mrs. Thweatt on January 18. On January 18, Burton again spoke to his wife by telephone from Colorado. He told her that he would be home late the following evening. Nothing has been heard from Burton since he talked with his wife on January 18, 1984. The parties have stipulated that Burton's business records do not disclose what became of the claimants' funds.

Following Burton's disappearance, the Virginia State Bar Disciplinary Board conducted a hearing on charges of misconduct by Burton relating to Mrs. Thweatt and Mrs. Buckner. Burton did not appear to answer the charges, and there is no evidence that he personally received notice of

---

1. Burton also sold stock in the gold mine to the claimants. The stock appears to be worthless but it is not a part of the claims against Continental.

the proceedings. The Disciplinary Board found that he had violated various rules of the Virginia Code of Professional Responsibility and revoked his license to practice law. Mrs. Buckner filed a claim with the Client Security Fund of the Virginia State Bar charging Burton with fraudulent or dishonest acts. Administrators of the fund have not yet decided her claim. Burton has also been indicted, but not on complaint of Mrs. Buckner or Mrs. Thweatt.

## II

Continental contends that the losses suffered by Mrs. Buckner and Mrs. Thweatt were not caused by the performance of "professional services" within the meaning of Burton's insurance policy. The policy obligates the company:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages:
>
> 1. arising from the performance of professional services for others in the insured's capacity as a lawyer, real estate title insurance agent or notary public ...
>
> When the insured acts as an administrator, conservator, executor, guardian, trustee, receiver or in any other similar fiduciary activity, any act or omission committed by the insured in such capacity shall be deemed to have been committed during the performance of the insured's professional services....

Continental asserts that receiving funds from Mrs. Buckner and Mrs. Thweatt for investment "involved a separate and distinct transaction from any of the legal services [Burton] previously provided to them." These transactions, it argues, are not within the "practice of law" as that term is defined by the Supreme Court of Virginia and are not covered by Burton's policy.

The district court held that Burton acted as a fiduciary or trustee when he accepted Mrs. Buckner's and Mrs. Thweatt's funds for investment in the course of an attorney-client relationship. Accordingly, the court held that the policy afforded coverage.

We conclude that the district court's ruling with respect to coverage is supported by both the facts and the law. Burton acted as a lawyer for both claimants before and after they entrusted money to him. The funds were derived in part from legal proceedings in which he represented them. The policy did not limit coverage to Burton's activity in actual legal proceedings. It expressly included his services as a fiduciary.

The only expert witness, a lawyer with 27 years experience in the practice of law in Virginia testified that in his opinion Burton's conduct in investing his clients' funds was activity generally associated with the practice of law. He also expressed the opinion that Burton was acting in a fiduciary capacity similar to that of a trustee.

The Virginia Supreme Court does not appear to have addressed a similar factual situation. Virginia, however, adheres to the general rule that if an insurance policy "is susceptible of two constructions, one of which would effect coverage and the other would not, the court will adopt that construction which will afford coverage." *Lincoln National Life Ins. Co. v. Commonwealth Corrugated Container Corp.*, 229 Va. 132, 137, 327 S.E.2d 98, 101 (1985). Application of this rule of construction to the facts of the case establishes coverage. It is commonplace that a person who is not a lawyer may invest another's money. But it does not follow that an attorney who undertakes such services is conclusively considered not to be acting in his capacity as an attorney.

For the purpose of determining coverage of a professional liability policy the test is whether the attorney was engaged for legal services by a client who subsequently entrusted him with money for investment.[2]

---

2. *Ellenstein v. Herman Body Co.*, 23 N.J. 348, 129 A.2d 268, 270 (1957), states the test as follows:

"[T]he controlling circumstance is whether the attorney was in fact engaged for the purpose of obtaining his legal services. If he was

*See Smith v. Travelers Indemnity Co.*, 343 F.Supp. 605, 609 (M.D.N.C.1972). In *Smith* a policy did not afford coverage to an attorney who solicited funds for investment from a person whom he did not represent in any legal proceeding. In contrast, a policy similar to Burton's covered the activity of an attorney who invested money from clients whom he had represented in a legal capacity. *See Miles v. St. Paul Fire and Marine Ins. Co.*, 381 So.2d 13 (Ala. 1980).

Continental's reliance on the Virginia Supreme Court's definition of the practice of law in its Rules of Court, 215 Va. 861 (1975), is misplaced.[3] The rule does not limit the services which a lawyer may provide in his professional capacity; rather, it sets forth those services which only a lawyer, and not a layman, may provide. *See Commonwealth v. Jones & Robins, Inc.*, 186 Va. 30, 36, 41 S.E.2d 720, 723–24 (1947).

### III

Continental's policy excludes from coverage "any dishonest, fraudulent, criminal act or omission of the insured ..." Virginia law requires the insurance carrier to prove that the loss is excluded from the terms of the policy. *See White v. State Farm Mutual Automobile Ins. Co.*, 208 Va. 394, 396, 157 S.E.2d 925, 927 (1967). Continental recognizes that it must prove fraud or criminal offenses by clear and convincing evidence, and that it must prove other dishonest acts or omissions by a preponderance of the evidence.

Continental properly points out that dishonesty, fraud, and criminality, whether practiced through acts or omissions, can be proved by circumstantial evidence.[4] It asserts that the evidence establishes that Burton either pledged the claimants' funds as collateral for his debts, or embezzled or stole them. Burton's disappearance and his failure to repay the funds, it argues, prove at a minimum his dishonesty. In support, it cites Burton's indictment, the revocation of his license, the lack of records, Mrs. Buckner's allegations in civil proceedings, and her petition to the state bar security fund.

We conclude that Continental has not established the exclusion as a matter of law. The carrier's defense is factual. We must therefore examine the district court's findings to determine whether they are clearly erroneous.

Mrs. Buckner alleged fraud and dishonesty both in her civil action in state court and the petition to the Bar Security Fund. She testified that she did not believe Burton embezzled her money, that the pleadings were drafted by her lawyer, and she signed them at his request. The district court credited her testimony and accepted her explanation for her inconsistent positions. We find no grounds for setting aside the trial court's credibility finding. Mrs. Buckner is an elderly woman who had

so engaged, then the fact that in the course of the rendition of the services he stepped beyond the strictly legal role to undertake to render services which a non-lawyer could render, would not justify the conclusion that he was engaged other than as a lawyer...."

3. Pertinent extracts from the rule provide:
   Specifically, the relation of attorney and client exists, and one is deemed to be practicing law, whenever—
   (1) One undertakes for compensation, direct or indirect, to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.
   (2) One, other than as a regular employee acting for his employer, undertakes, with or

without compensation, to prepare for another legal instruments ...
   (3) One undertakes, with or without compensation, to represent the interest of another before any tribunal ...

4. Continental relies on a number of cases which hold that the trier of fact may find embezzlement on the basis of circumstantial evidence. *See, e.g., Challenor v. Commonwealth*, 209 Va. 789, 167 S.E.2d 116 (1969); *Stegall v. Commonwealth*, 208 Va. 719, 160 S.E.2d 566 (1968); *United States v. Powell*, 413 F.2d 1037 (4th Cir. 1969). These cases are factually dissimilar from Burton's situation. In each, the defendant testified, and the trier of fact rejected his explanation.

dealt satisfactorily with Burton over a period of many years.[5]

Apart from Mrs. Buckner's prior inconsistent statements, there is no significant dispute about the material facts. Burton had practiced law for a number of years. The record discloses no blemish on his reputation. Both claimants testified that they sought his representation for their legal affairs and that he had served satisfactorily. He was in the process of moving his office from Petersburg to Gwynn's Island, Virginia, and it was this that prompted the claimants to request their funds, rather than any dissatisfaction with him. At the trial, his wife produced his office files, but they shed no light on the claimants' investments. Whether the lack of records resulted from negligence or fraudulent, dishonest intent has not been shown. The court found that Burton had paid interest regularly. He had told the claimants he would combine their funds with other funds, including his own money, to get the best return on the investments that he could. They acquiesced in this commingling of funds. The court also found that the evidence did not prove that Mrs. Buckner's funds were used to purchase the certificate that Burton pledged for collateral. A promissory note stipulated that interest would be paid at the rate of a designated certificate, but Burton never represented to Mrs. Buckner that her money was invested in the certificate. The court found that the funds for this certificate could have come from other sources and that the source had not been identified.

Burton disappeared while on a business trip to Colorado. While there, he kept in touch with his wife by phone and told her when he expected to return. Continental has diligently, but unsuccessfully, sought Burton. The cause and manner of his disappearance are unknown.

A copy of the indictment against Burton was not introduced into evidence. Its existence was made known only because counsel for Mrs. Buckner believed that he would be remiss if he did not advise the court that he was aware that Burton had been indicted. He added that the indictment did not result from any complaint from Mrs. Buckner or Mrs. Thweatt. The crime charged in the indictment is not disclosed by this record. In any event, the indictment establishes probable cause to believe Burton was guilty of some crime. It does not satisfy Continental's burden of proving by clear and convincing evidence a criminal act with respect to the claimants' funds. Nor does it establish by a preponderance of the evidence that Burton dealt dishonestly with the claimants.

Continental's assertion of the policy's exclusion clause as a defense is undoubtedly the most difficult aspect of the case. Its resolution on appeal is governed by Federal Rule of Civil Procedure 52(a), which governs review of findings of fact,[6] and by Virginia law, which places the burden of

---

5. At the conclusion of Mrs. Buckner's testimony, the following colloquy took place:

> The Court: I don't want to keep pushing on this thing, but I am at a loss to understand why you would tell the state bar—let me see if I can find the language—well you knew by filing this that you were telling the bar you had been cheated out of your money, didn't you know that?
> A. Your honor, I did, yes.
> The Court: Why did you say that if you are now telling me that you didn't accuse him of fraudulently taking your money.
> A. To be perfectly honest with you, I think that I was so distraught at my personal losses and financial losses that I wasn't sure at that point, although I have always trusted him. But when all this happened so quickly, I just

didn't—and if I had to—I mean, I have said all along that I don't believe Bill willfully and intentionally set about to—
> The Court: Do you have any idea whether he really took your money or whether he is off somewhere suffering from amnesia?
> A. I don't.
> The Court: You don't have any idea?
> A. I don't have any idea.

6. Rule 52(a) as amended in 1985 provides in part:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

proof of an exclusion on the insurance carrier.[7]

In *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), the Court explained that "[w]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." This rule prevails, the Court emphasized, even when the district court's findings are based on inferences drawn from the facts. 105 S.Ct. at 1512. Here a critical fact—the cause and manner of Burton's disappearance—is unknown. Under these circumstances, the case has to be resolved by drawing inferences from the known facts. The district court, unable to determine whether Burton's failure to repay the claimants was caused by dishonesty or embezzlement or by death or some other disabling misfortune, found that the evidence was insufficient to draw the inference that Burton was dishonest or that he had embezzled the claimants' funds. If the district court, like the Bar Disciplinary Board, had drawn a contrary inference, we cannot say that it would have been implausible. But as *Anderson* points out, this conclusion would not justify us in holding the district court's findings clearly erroneous if the inference the district court drew is plausible. *See Anderson,* 105 S.Ct. at 1513.

*Anderson* also reiterates that an appellate court may not reverse the trial court "simply because it is convinced that it would have decided the case differently." 105 S.Ct. at 1511. On the contrary, the appellate court can rule that the trial court's findings of fact are clearly erroneous only when although there is evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson,* 105 S.Ct. at 1511 (*quoting United States v. United States Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Under Virginia law speculation that Burton might have been dishonest is not enough. Continental's burden was to prove dishonesty by at least a preponderance of the evidence. Continental has also alleged that the claims involve fraudulent, criminal acts. These allegations require proof by clear and convincing evidence.

The district court's ultimate finding is that Continental has failed to prove that Mrs. Buckner's and Mrs. Thweatt's claims are excluded from the coverage afforded by the policy. The historical facts which the district court found are not clearly erroneous. Indeed the most important are undisputed. The inference the district court drew from these facts is plausible although a contrary inference could also be drawn. Accordingly, we conclude that the district court's ultimate finding of fact is not clearly erroneous.

## IV

Continental's final contention is that Burton breached the policy's cooperation clause and relieved the company of liability with regard to the losses of Mrs. Buckner and Mrs. Thweatt. It argues that "[t]he facts of this case clearly establish Mr. Burton's non-cooperation. Mr. Burton did not appear at the trials of the underlying suits. In fact, Mr. Burton did not participate at all in the defense of the underlying suits." Continental points to Burton's disappearance after receiving demand for return of each woman's funds. It argues that the only reasonable inference to be drawn from this evidence is that Burton fled to avoid law suits which he knew would soon be brought against him.

In Virginia, rules for construing cooperation clauses in insurance contracts have developed in the context of actions on automobile liability policies. We agree with the district court that the rules developed in those cases apply to this case.

In order to establish that the insured has breached a cooperation clause by being unavailable, the insurer must prove that the

**7.** *See White v. State Farm Mutual Automobile Ins. Co.,* 208 Va. 394, 396, 157 S.E.2d 925, 927 (1967).

insured willfully breached the clause in a material or essential particular and that the insurer made a reasonable effort to secure the insured's cooperation. *See Cooper v. Employers Mutual Liability Ins. Co.,* 199 Va. 908, 914, 103 S.E.2d 210, 214 (1958); *Grady v. State Farm Mutual Automobile Ins. Co.,* 264 F.2d 519 (4th Cir.1959). The existence of the insured's noncooperation with the insurer is ordinarily a question of fact on which the insurer has the burden of proof. *Shipp v. Connecticut Indemnity Co.,* 194 Va. 249, 258, 72 S.E.2d 343, 348 (1952); *Bryant v. Liberty Mutual Ins. Co.,* 407 F.2d 576, 577–78 (4th Cir.1969). The parties have stipulated to Continental's diligence in attempting to locate Burton.

■ The district court found that Continental had not carried the burden of proving willfulness on Burton's part. The court observed that there is no evidence that Burton ever was made aware that Mrs. Buckner and Mrs. Thweatt filed suits against him. The district court found that the inference that Burton's disappearance was willful noncooperation was no more compelling than the inference that it was caused by disablement or foul play. This is a permissible view of the evidence which we may not disturb. *Anderson,* 105 S.Ct. at 1512.

The cases on which Continental relies do not require a different result. In *Cooper,* 199 Va. 908, 103 S.E.2d 210, the insured had actual knowledge that he had a duty to cooperate with his insurance company. In *Grady,* 264 F.2d 519, the insured was notified by letter of his duty to cooperate. A subsequent letter from the insurer to the insured was returned marked "Unknown." Thereafter the insurer made diligent efforts to contact the insured but was unable to do so. In *State Farm Mutual Automobile Ins. Co. v. Davies,* 226 Va. 310, 310 S.E.2d 167 (1983), the parties stipulated to the noncooperation of the insured. None of these cases suggests that the disappearance of Burton requires a finding that he willfully failed to cooperate with Continental.

Finally, Continental argues that Burton was given notice of his duty to cooperate by means of the substituted service which Mrs. Buckner and Mrs. Thweatt used in the state proceedings. The district court properly rejected this argument. Under Virginia law, willful noncooperation requires a deliberate or intentional refusal to cooperate. *See Cooper,* 199 Va. at 913, 103 S.E.2d at 215; *State Farm Mut. Automobile Ins. v. Arghyris,* 189 Va. 913, 929, 55 S.E.2d 16, 23 (1949). Although constructive notice allowed the Virginia courts to obtain personal jurisdiction over Burton, it did not require the district court to find that he had actual knowledge of the suits. *See Bridgewater Roller-Mills Co. v. Strough,* 98 Va. 721, 728, 37 S.E. 290, 292 (1900) ("Proof of actual notice must be such as affects the conscience of the party sought to be charged with such notice ...."). Here there is no proof that Burton received actual notice. We conclude that the district court's finding that Continental failed to prove Burton's willful noncooperation is not clearly erroneous.

The judgment of the district court is affirmed.